Perkins Electric Lamp Co. v. Hood.

44   449
44   510

# The Perkins Electric Lamp Co.

## v.

## William Hood.

*Judgments and Decrees—Agency—Contract.*

1. It is only when a decree is based upon testimony heard by a given court, that the certificate by the judge, of the evidence, is required upon appeal.

2. Upon a bill filed to obtain complainant's supposed rights under an agreement duly set forth, this court construes the same, likewise another entered into between one of the parties to the first contract and a third party, and reverses the decree for complainant and remands the cause, with directions to allow him to take a decree for such amount as belongs to him.

[Opinion filed June 1, 1892.]

APPEAL from the Circuit Court of Cook County; the Hon. MURRAY F. TULEY, Judge, presiding.

Messrs. KNIGHT & BROWN, for appellant.

Mr. O. M. SMITH, for appellee.

GARY, J.   The appellee filed his bill to obtain his supposed rights under the following agreement:

"This agreement, made this 21st day of May, 1889, by and between the Perkins Electric Lamp Company, a corporation established under the laws of the State of Connecticut, having its principal offices located in Hartford, Connecticut, of the first part, and Thomas Peters Conant and William Hood, citizens of the city of Chicago, in the State of Illinois, jointly and severally engaged in the sale and installation of electric lighting apparatus, of the second part.

"Witnesseth: That the said party of the first part does hereby constitute and appoint the party of the second part as its selling agent for the territory comprised in the city of Chicago, in the State of Illinois and the State of Michigan, to sell and use within said territory the incandescent lamp and apparatus manufactured and sold by the party of the first part, and known as the Perkins lamp and socket. Said party of the second part shall also have the right, not exclusive, to sell said lamps in and throughout the territory of the United States, when such lamps and sockets are to be used in connection with the system of electric lighting installed by said party of the second part.   It is understood and agreed that the price to be paid by the party of the second part for such lamps shall not be more than the existing list price of the party of the first part, less twenty-five (25) per cent, and shall in all cases be as low as the lowest prices made to or paid by any other dealers of the same class.

"The party of the second part shall pay for the double-pole Perkins key-socket sixty (60) cents cash net, and for the keyless socket fifty (50) cents each net.

" These prices as fixed are understood to include delivery at Chicago, or to be free on board at the town of Manchester, in the State of Connecticut, at the option of the party of the second part. Payment for all such goods as shall be sold and delivered shall be made on the 10th day of the month succeeding such sale and delivery.

" It is further understood and agreed that the party of the first part guarantees for each and every lamp a useful life of maximum efficiency, extending over a continuous period of not less than six hundred (600) hours actual service.

" It is further understood and agreed that the party of the first part will protect the party of the second part, and any consumer or user in whose possession such lamps or apparatus may have been or may be found, against any suit for infringement founded upon any patents or patent rights brought or prosecuted by any party whatsoever, and said party of the first part agreed to defend such suit and to save said party of the second part or their customers from any loss or losses whatsoever by reason of such suits.

" It is understood and agreed that the party of the second part, in consideration of the matters, covenants and agreements set forth herein, is not to use or sell within the exclusive territory hereinbefore named, any other lamp or socket in connection with the system of electric lighting installed by them, unless they are required to do so by their customers for the exigencies of the case, and in all cases to use their influence in behalf of, and to further the interests and sale of the lamps and sockets manufactured and sold by the party of the first part.

" It is understood and agreed that the party of the first part will replace all sockets, in any system installed by the party of the second part, free of cost. The party of the second part shall be allowed, credited and paid by the party of the first part at the rate of three (3) cents for each and every Perkins lamp-base purchased during the continuance of this contract, when such bases are delivered on the cars at Manchester, Connecticut, and all such bases removed by

the party of the second part shall be so returned to the party of the first part in Manchester, Connecticut, during the existence of this agreement.

" It is understood and agreed that, in consideration of the matters, covenants and agreements set forth herein, the said party of the first part will also allow as commissions to the said party of the second part, the difference between the price of lamps and sockets hereinbefore specified, and the selling price of the same on all sales made directly by the said party of the first part through its general western agency for the territory herein set apart.

"It is understood and agreed that this agreement shall continue and remain in force for a period of one year from the date of its execution, and thereafter until terminated by notice in writing, given by either party to the other at least one month before the termination of any period of one year.

" In witness whereof the parties hereto have hereunto set their hands and seals the day and year first above written.

　　　　The Perkins Electric Lamp Company,

　　　　　　By W. G. Halm, V. P. & W. Mgr.
　　　　Thomas Peters Conant,　　　　[Seal.]
　　　　William Hood.　　　　　　　[Seal.]"

The bill alleged that on the 20th day of July, 1889, with the knowledge and consent of the company, Conant assigned his interest to the appellee; the assignment on the 28th day of October, 1889, was proved, but not the knowledge and consent. No point is made, however, as to the right of Hood alone, either to a performance, or the benefit of the contract.

About December 6, 1889, the appellant employed M. A. Knapp as its western manager, and afterward made this contract:

" This indenture made this tenth day of January, 1890, by and between the Perkins Electric Lamp Company, a corporation organized under the laws of the State of Connecticut, and located in the town of Manchester in said State, as party of the first part, and the Knapp Electrical Works, a

corporation organized under the laws of the State of Illinois, and located in the city of Chicago, in said State, as party of the second part, Witnesseth:

" That the party of the first part being engaged in the manufacture of what are known as Perkins electric lamps and sockets, and being desirous of extending their sale, agrees with the party of the second part that the latter shall, so long as this contract remains in force, have and enjoy the sole and exclusive right to sell and dispose of the said lamps and sockets manufactured by the party of the first part, within the territory comprising the States of Illinois, Indiana, Wisconsin, Michigan, Iowa, Minnesota, California, Washington, Oregon, Kansas, Missouri, Arkansas, North and South Dakota and Northern Ohio, from a line drawn east and west through Columbus, and that the party of the first part will not sell or dispose of said lamps or sockets to any one within any of said States while this agreement remains in force, except through the party of the second part; always provided, however, that the party of the first part reserves the right to do all that is necessary in order to fulfill its contract with Thomas Peter Conant and William Hood, which contract terminates May 1, 1890, and its contract with the Mather Electric Company, dated April 18, 1889; and also the further right to make any sales directly and not through the party of the second part, to the Hawkeye Electric Manufacturing Company of Davenport, Iowa; to the National Electric Manufacturing Company of Eau Claire, Wisconsin; to the Rockford Electric Manufacturing Company of Rockford, Illinois; to the Fort Wayne Electric Company of Fort Wayne, Indiana; and to any other manufacturer of dynamos now or hereafter existing within said States.

" It is further understood and agreed that the above mentioned dynamo manufacturers shall not offer for sale the Perkins lamp or socket to the general public, but to the operators of their respective dynamos only.

" The party of the second part agrees to extend the sale and use within said territory of the said lamps and sockets

manufactured by the party of the first part, both through its best personal efforts and through the efforts of a sufficient number of efficient agents properly located in the various parts of said territory.

" The party of the second part agrees to receive and care for all goods sent it by the party of the first part, to hold the same until sold as the property of the party of the first part, and keep them properly insured in the name of the party of the first part.

" The party of the second part further agrees not to sell said lamps and sockets for use without said territory, except with the express consent of the party of the first part. The party of the second part agrees not to sell said lamps at prices less than thirty per cent from list dated April 1, 1889, without first obtaining the written consent of the said Perkins. Electric Lamp Company.

" It is mutually agreed that the party of the second part shall receive a commission on all sales of ' ten per cent, which commission shall be in lieu of all other compensation for any services performed or obligations incurred under this agreement by the party of the second part, except as hereinafter expressly stipulated.

" The party of the second part further agrees to send to the party of the first part, on the first business day of each week, a statement of all sales made during the preceding week, duly filling out any blanks furnished by the party of the first part for such purpose, and to pay for the said goods the price at which they have been sold in accordance with the preceding provisions, with a deduction of said commission of ten per cent, and to make said payment on the fifteenth day of each month, for all the goods sold before the first day of that month, whether they shall themselves be paid by their customers for said goods or not. It is agreed that this payment shall be made by a bank draft on New York, and that for said draft promptly remitted, the party of the second part may deduct two per cent from the amount to be paid as above stipulated.

" The party of the second part also agrees not to become

interested, directly or indirectly, while this contract remains in force, in the use or sale of any lamps or sockets for incandescent electric lighting not manufactured by the party of the first part.

"The party of the second part further agrees to use its utmost diligence to sell the goods of the party of the first part for the largest price possible within the limits of the price hereinbefore designated.

"The party of the second part also agrees not to sell or furnish said lamps or sockets to be used on any apparatus heretofore or hereafter produced by the Mather Electric Company, or any user of the Mather system; and agrees to do nothing else inconsistent with the contract dated April 18, 1889, between the party of the first part and the Mather Electric Company of Manchester, Connecticut.

"The party of the first part further agrees to furnish, without charge, all lamps which may be necessary in order to satisfy its usual guaranty of an average useful life.

"The party of the first part also agrees to defend any and all suits brought by any person whatsoever, against the party of the second part or against any person to whom they have sold or furnished any of said lamps or sockets, and alleging a consequent infringement of any patent or patent rights, and if immediately notified of any such suit or suits, agrees to hold them harmless and to save them from all loss or damage by reason thereof.

"It is mutually agreed that this contract shall continue and remain in force for the period of one year from January 10, 1890, and shall continue in force thereafter until the expiration of sixty days after notice of termination is given in writing by either party.

"It is mutually agreed that if the party of the first part is at any time restrained by order of court from manufacturing or selling said lamps or sockets, this contract shall be suspended from operation while such restraining order is in force, except in so far as it applies to what has previously happened.

"In witness whereof the said parties have caused these

presents to be executed by their officers, duly authorized on the day and year first above written.

THE PERKINS ELECTRIC LAMP COMPANY,
By M. S. CHAPMAN, President.
J. J. GATES, Secretary.
F. M. KNAPP, President."

The question upon which this case turns is, did the contract with the Knapp Company constitute that company the "general Western agency" of the appellant, as those words are used in the next to the last paragraph of the contract between the parties to this appeal, or are they to be considered "dealers of the same class," as those words are used in the first paragraph of that contract. Under the Knapp contract the goods remained the goods of the appellant until they were sold; they then became the property of the customer—never of the Knapp Company.

The Knapp Company differed from an ordinary factor acting under a *del credere* commission, in the single feature that it must pay on the 15th of each month for goods sold before the 1st, while a *del credere* factor is only to pay, if the buyer does not, when the price is due. The higher or lower price at which the goods were sold by the Knapp Company made nine times the difference to the appellant that it did to the Knapp Company, and the latter could not sell below prices fixed by the appellant.

On the contrary the appellee received goods at Chicago or Manchester, and was to pay fixed prices for them on the 10th of the following month; did what he pleased with the goods; sold, or gave them away, as he might choose. He was a dealer, in his own property, exclusively for his own profit or loss.

Notwithstanding that the contract with the appellee calls him an agent, and that with the Knapp Company does not so call that company, the effect to the two contracts is, that the party called agent is not agent, and the one not so called is. With or without reason, the appellant might have stepped in and claimed from the customer the price of goods sold by the Knapp Company, but could not do so as to

Perkins Electric Lamp Co. v. Hood.

goods sold by the appellee. It follows that the appellee is entitled to claim of the appellant as to goods sold by the Knapp Company, only the excess obtained by the Knapp Company for such goods over the prices which the appellee was to pay to the appellant for the same goods.

There are several small items in the decree for the appellee, of which no complaint is made; the great residue is based upon sales made by the appellant and the Knapp Company. Full schedules show what they are, and we might by a calculation arrive at a result here. But it is more convenient to us, and the same thing to the parties, to reverse the decree and remand the cause, with directions to allow the appellee to take a decree for all the small items before mentioned, and for all, and only, the excess over the list prices, with twenty-five per cent off, which the appellee was to pay, in the prices for which the goods were respectively sold by the appellant or the Knapp Company, as shown by the schedules, and it is so done.

If any goods were so sold, at prices higher than appellee was to pay, he is entitled to the excess on those particular goods; but nothing on account of goods sold at prices as low or lower than the list, twenty-five off.

If, to present the merits, this case required a certificate by the judge, of the evidence, the lack of such certificate would be no ground for dismissing the appeal, as the appellee has moved. There might be error in want of conformity of the decree to the bill, but it is only when the decree is based upon testimony heard by the court that such a certificate is necessary; the need of the certificate came with the act of February 12, 1849. White v. Morrison, 11 Ill. 361.

*Reversed and remanded with directions.*